**EXHIBIT 2**



FILED
KING COUNTY, WASHINGTON

APR 15 2011

SUPERIOR COURT CLERK
EILEEN L. MCLEOD
DEPUTY

HONORABLE KIMBERLEY PROCHNAU

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW J. MISZEWSKI, an individual,<br><br>    Defendant. | No. 11-2-04589-7 SEA<br><br>FINDINGS OF FACT, CONCLUSIONS OF LAW, PRELIMINARY INJUNCTION AND ORDER |

## I. INTRODUCTION

This matter came before the Court on Plaintiff Microsoft Corporation's ("Microsoft's") Motion for Preliminary Injunction. The Court heard argument on Microsoft's motion on February 23, 2011. The Court considered Plaintiff's First Amended Complaint, Plaintiff Microsoft's Motion for Preliminary Injunction, the Declarations of Lynne Stockstad and Charles Sipos (filed Jan. 26, 2011), the Supplemental Declaration of Lynne Stockstad and the Declaration of Kevin Hamilton (filed Feb. 10, 2011), and the attachments and exhibits to those declarations, Defendant Miszewski's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, the Declarations of Matthew Miszewski, Steven W. Fogg, Jonathan Murray, Jason H. Eaddy, and Allison Goodman, and

FINDINGS OF FACT, CONCLUSIONS OF LAW, PI AND [PROPOSED] ORDER ORIGINAL

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

41826-6033/LEGAL20298476.1

the attachments and exhibits to those declarations, Plaintiff Microsoft's Reply In Support of Motion for Preliminary Injunction, the Second Supplemental Declaration of Lynne Stockstad, the Supplemental Declaration of Charles C. Sipos, and the Declaration of Jennifer Zumek (filed Feb. 22, 2011), and the attachments and exhibits to those declarations. Being fully apprised, the Court GRANTS Microsoft's motion as follows:

## II.   FINDINGS OF FACT

Based on the evidence and testimony presented at hearing the Court makes the following findings of fact:

1.   Microsoft is a Washington corporation and a worldwide leader in the development, marketing and distribution of a variety of computer software, services and solutions.

2.   Miszewski joined Microsoft on March 8, 2007. Transcript of Feb. 23, 2011 Proceedings ("Oral Order"), at 38:6-7. Prior to his hire, Miszewski entered into an Employment Agreement with Microsoft. The Employment Agreement included a noncompetition provision ("noncompete"). *Id.* at 38:6-8.

3.   On December 31, 2010, Miszewski quit his job at Microsoft and joined Salesforce.com. *Id.* at 38:19-20. On or about January 18, 2011, Miszewski became an employee of Salesforce.com as its Senior Vice President, Global Public Sector. Miszewski had engaged in negotiations with Salesforce.com for employment while still employed by Microsoft. *Id.* at 38:20-22.

4.   Prior to his resignation on December 31, 2010, Miszewski was an Industry Market Development Manager in Microsoft's Worldwide Public Sector group. Microsoft's Worldwide Public Sector group specializes in the development, marketing and sales of Microsoft products and services across the industries of Government, Health and Education. The Worldwide Public Sector group is responsible for the strategic business development,

marketing, and sales of Microsoft's customer relationship management ("CRM") solutions and cloud computing solutions for Microsoft's Public Sector customers.

5. While employed by Microsoft, Miszewski acted as an "evangelist" for cloud computing and CRM products globally, and also had responsibility for U.S.-based deliverables. *Id.* at 38:22-39:1. In addition to his global role, Miszewski had responsibility for strategy with regard to marketing to U.S. customers. *Id.* at 39:18-22. The U.S. market provides Microsoft's largest customer base for its CRM and cloud offerings. *Id.*

6. Miszewski's September 14, 2010, annual assessment indicates, among other things, that Miszewski billed revenue for the government industry, he achieved green on fiscal year 2010 public sector matrix that required contribution involvement of the U.S. market, and he was accountable for collaborating with the U.S. public sector group to meet these goals. His September 2010 assessment also indicated that he established partner business plans with partners in the U.S. preparing a U.S.-based case studies, met with potential government customers, which included meetings with U.S. based customers, and communicated strategy to the world-wide public sector field leadership, including the U.S. public sector. *Id.* at 39:1-13. Miszewski's March 9, 2010 mid-year performance check-in also identified U.S.-based responsibilities and strategic marketing business and sales guidance. *Id.* at 39:14-17.

7. During the course of his employment at Microsoft, Miszewski had access to confidential and proprietary information related to CRM and cloud computing solutions. *Id.* at 41:20-21. The Court makes no finding that Miszewski improperly disclosed this information.

8. Salesforce.com is very clearly a competitor of Microsoft, particularly with respect to cloud-based computing. *Id.* at 39:23-25. Salesforce.com competes with Microsoft in the domestic U.S. market, and obviously intends to compete aggressively with Microsoft in the global sector as well. *Id.* at 39:25-40:14.

FINDINGS OF FACT, CONCLUSIONS OF
LAW, PI & ORDER – 3

9. While employed by Microsoft, Miszewski personally competed with Salesforce.com. For example, Miszewski competed with Salesforce.com personnel at a London panel after which he informed Microsoft employees that he had neutralized Salesforce.com's arguments. *Id.* at 40:2-5. Miszewski obviously saw Salesforce.com as a competitor, and as a company interested in moving into the global field and competing with Microsoft for market share. *Id.* at 40:6-9.

10. The press release issued by Salesforce.com announcing its hire of Miszewski and Miszewski's own emails indicate that he was hired to market Salesforce.com products to the global public sector. *Id.* at 40:15-18. According to the Salesforce.com press release, Miszewski "will lead Salesforce.com's global public sector initiatives to help government make their citizens more successful through the power of cloud computing." In that same press release, Miszewski stated that he believed that Salesforce.com is "the cloud computing leader" and that the market for cloud computing services is currently "at what is an inflection point for cloud adoption in the global public sector."

11. Miszewski represented in his response to Microsoft's Motion for Preliminary Injunction that he would limit himself to the U.S. public sector. *Id.* at 40:15-21.

12. Prior to accepting employment with Microsoft, on March 8, 2007, Miszewski signed an Employee Agreement with Microsoft ("Employee Agreement"). The Employee Agreement contains terms that prevent Miszewski from: (a) disclosing any Microsoft confidential or proprietary or trade secret information during his employment and at all times thereafter (Employee Agreement ¶ 3); (b) engaging in competitive activities with Microsoft for a period of one year following his departure from Microsoft, which includes accepting employment with an entity or person providing any product or service intended to be competitive with any Microsoft product or service (Employee Agreement ¶ 10); and (c) rendering services to any client or customer of Microsoft that Miszewski performed services for in the year prior to his departure from Microsoft (Employee Agreement ¶ 10).

FINDINGS OF FACT, CONCLUSIONS OF
LAW, PI & ORDER – 4

13. On its face, the noncompete restrains Miszewski from engaging in any competitive activities or accepting employment or providing services to any person or entity that engages in competitive activities. Competitive activities is defined to include products or services that are intended to be competitive with products and services Miszewski worked on while employed by Microsoft, or about which he learned confidential or proprietary information or trade secrets. Oral Order at 38:10-18.

14. In his Employee Agreement, paragraph 10, Miszewski agreed that "the restrictions in this paragraph [10] are reasonable in light of, among other things, the global and highly competitive markets in which Microsoft and its subsidiaries operate."

15. In his Employee Agreement, paragraph 13, Miszewski concedes that violation of paragraph 9 (return of materials), paragraph 10 (non-compete), or paragraph 3 (non-disclosure) of the Agreement, "will cause irreparable injury to Microsoft and shall entitle Microsoft to equitable relief by a court, including without limitation temporary restraining orders and preliminary and permanent injunctions, which may extend any previously agreed period of restraint."

16. Miszewski possesses talent and experience in the information technology field that is independent from his work at Microsoft; for instance, his work as the Chief Information Officer for the State of Wisconsin. See Transcript of Feb. 23, 2011 Proceedings ("Oral Order"), at 38:3-6.

### III. CONCLUSIONS OF LAW

1. The Court has jurisdiction over Miszewski and the subject matter of this action, pursuant to paragraph 15 of the Employee Agreement, which states "that exclusive venue and exclusive personal jurisdiction for any action arising out of [the] Agreement shall lie in state or federal court located in King County, Washington." (Employee Agreement ¶ 15).

FINDINGS OF FACT, CONCLUSIONS OF
LAW, PI & ORDER – 5

2. The Employee Agreement is "governed for all purposes by the laws of the State of Washington." (Employee Agreement ¶ 15).

3. Microsoft provided notice to Miszewski of its intention to seek this Order, and has otherwise met and complied with all requirements for injunctive relief set forth in CR 65, RCW 7.40.020, and Rule 65(b) of the Local Rules for King County Superior Court.

4. To obtain a preliminary injunction, a plaintiff must establish (1) a clear legal or equitable right; (2) a well-grounded fear of an immediate invasion of that right by the defendant; and (3) that the acts constituting such an invasion are resulting, or will result, in actual and substantial injury to the plaintiff. *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000). These elements must be reviewed as part of a balancing of the relative interest of the parties, and where appropriate, the interest of the public. *Id.*

5. Based on the Findings of Fact set forth above, the credible evidence before the Court establishes that there is a substantial likelihood that Microsoft will succeed on the merits of its claims that Miszewski is in breach of his Employee Agreement and Microsoft will be substantially harmed by such breach and will continue to be harmed unless Miszewski is enjoined.

6. Microsoft has established that it has a clear legal and equitable right and a well-grounded fear of an immediate invasion of that right by Miszewski, and that such invasion threatens immediate and substantial injury to Microsoft. Oral Order at 41:1-4; 41:16-19.

7. Covenants not to compete upon termination of employment are enforceable in Washington if they are reasonable. *Knight, Vale & Gregory v. McDaniel,* 37 Wn. App. 366, 368 (1984).

8.

FINDINGS OF FACT, CONCLUSIONS OF
LAW, PI & ORDER – 6

9. There is no question that there is sufficient consideration for the noncompete because it was signed by Miszewski as a condition of his employment. *Id.* at 38-6-10; 41:4-5.

10. The one-year period of the noncompete is certainly reasonable. *Id.* at 42:10-11. The geographic scope of the noncompete is also reasonable, as Miszewski was employed on a global basis by Microsoft, Microsoft and Salesforce.com compete globally, and Miszewski held a unique position at Microsoft where he was the face of Microsoft on a global scale. *Id.* at 42:11-18.

11. It is clear that Miszewski is working for a competitor of Microsoft, Salesforce.com. *Id.* at 42:1-6. Whether performing the job as originally identified by Salesforce.com or as identified in his response to Microsoft's Motion for Preliminary Injunction, Miszewski is acting in direct violation of his noncompete. *Id.* at 42:23-43:14.

12. Miszewski's breach of the noncompete provisions of his Employee Agreement will likely do substantial harm to Microsoft's business relationships and unfairly prejudice Microsoft's ability to compete and carry out its business plans. In addition, Miszewski's possession, use, and/or disclosure of the proprietary and confidential information of Microsoft is likely to damage Microsoft in ways difficult to quantify by imposing severe competitive harm on Microsoft. *Id.* at 41:1-7; 41:16-41:21; 42:1-6.

13. Non-compete agreements must not impose any greater restraint than is reasonably necessary to serve the business interests of the employer and must consider whether such an agreement will cause injury to the public interest. One of the factors to be considered in whether a non-compete agreement is reasonable and whether enforcing the agreement will create an injury to the public is whether or not the non-compete agreement as applied will have the effect of effectively precluding the employee from pursuing his chosen profession. *Perry v. Moran*, 109 Wn.2d 691, 702 748 P.2d 224 (1987); *Alexander & Alexander.*, 19 Wn. App. At 687, 578 P.2d 530 (1978). As applied to the position for which Miszewski was

FINDINGS OF FACT, CONCLUSIONS OF
LAW, PI & ORDER – 7

originally hired for or the position identified in the response to the initial motion, the non-compete agreement is not overly broad.

14. Microsoft also proposed language to restrain Miszewski from rendering services to any client or customer of Microsoft for which Miszewski performed services at Microsoft and any position within salesforce.com that would necessitate Miszewski from working on products or services that are intended to be competitive with products and services that he worked on while employed by Microsoft or about which he learned confidential or proprietary information or trade secrets. However, given the scale of Microsoft's operations (Microsoft operates on a global basis and is involved in providing a broad array of products and services in the information technology industry), such restraints may be overly broad or overly restrictive.

15. The Court indicated in its oral ruling that it did not intend to necessarily prohibit Miszewski from working for salesforce.com altogether and that there may be other jobs that he can do within salesforce.com. Miszewski suggested in his proposed Findings that he not be prohibited from working in the public sector at salesforce.com in a position that is solely internal (as opposed to public sector customers in competition with Microsoft) or at salesforce.com in sectors other than the public sector. Microsoft has objected, in part, on grounds that no particular job has been identified and that they are unable to adequately respond. Shortly before this hearing the court received a new proposal from Salesforce.com identifying a new position limited to the Commercial sector in Washington, Oregon and Canada.

FINDINGS OF FACT, CONCLUSIONS OF
LAW, PI & ORDER – 8

**IV.** Materials submitted by Microsoft indicate Miszewski had access to confidential documents related to competitive strategies for marketing cloud computing solutions to government customers. Sales representatives were given information on how to market their presentations. Although the actual documents retain some confidential status, it is likely that major points outlined in these materials have now entered the public domain through those sales presentations; moreover, given the fast changing industry it is likely that some of this information is stale. **PRELIMINARY INJUNCTION**

Now, therefore, it is hereby ORDERED as follows:

1. Pursuant to Civil Rule 65(b), defendant Matthew J. Miszewski ("Miszewski"), and persons acting in concert with him, is hereby RESTRAINED and ENJOINED from any of the following acts:

   (a) From engaging in any employment with Salesforce.com (including the acceptance of any compensation, signing bonuses, or participation in benefits programs offered as part of employment with Salesforce.com), or agreeing to provide any services for Salesforce.com, for a one year period beginning January 1, 2011, and ending December 31, 2011 (i.e., the full length of time provided for in paragraph 10 of the March 8, 2007, Employee Agreement entered into by Miszewski) with respect to the following positions, functions, or responsibilities:

      (b) competing with Microsoft in the public sector, whether in the United States, or globally;

      (c) working in a marketing role in salesforce.com's public or commercial sector anywhere in the world;

      (d) filling the position as initially described in the press release issued by salesforce.com; or,

      (e) filling the position as described in the initial response by Miszewski to Microsoft's motion (b)

   (c) (d) From directly or indirectly using, disclosing, or publishing, or knowingly permitting others not so authorized to use, disclose, or publish, without Microsoft's authorization, any Microsoft confidential or proprietary information or trade secrets as provided for in paragraph 3 of the Employee Agreement.

2. Pursuant to Civil Rule 65(c), the Court finds that a bond in the amount of $1,000,000 to be an appropriate security for payment of costs and damages as may be

FINDINGS OF FACT, CONCLUSIONS OF
LAW, PI & ORDER – 9

incurred or suffered by Miszewski, should this Preliminary Injunction be found to have been wrongfully issued.

3. This Preliminary Injunction shall remain in force and effect until such time as this matter is tried and a permanent injunction is entered, or this matter is otherwise resolved.

ENTERED this 15 day of April, 2011.

_____
HON. KIMBERLEY PROCHNAU

Presented by:

**PERKINS COIE** LLP

By:_____
Kevin J. Hamilton, WSBA No. 15648
Charles C. Sipos, WSBA No. 32825
William B. Stafford, WSBA No. 39849

Attorneys for Plaintiff Microsoft Corporation

# CERTIFICATE OF SERVICE

On March 18, 2011, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the following document:

FINDINGS OF FACT, CONCLUSIONS OF LAW, PRELIMINARY INJUNCTION AND [PROPOSED] ORDER

| | | |
|---|---|---|
| William F. Cronin | _X_ | Via hand delivery |
| Steven W. Fogg | ___ | Via U.S. Mail, 1st Class, Postage Prepaid |
| Christina Dimock | ___ | Via Overnight Delivery |
| CORR CRONIN MICHELSON | ___ | Via Facsimile |
| BAUMGARDNER & PREECE LLP | ___ | Via E-Filing |
| 1001 Fourth Avenue, Suite 3900 | ___ | Other: _____ |
| Seattle, WA 98154-1051 | | |

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 18th day of February, 2011.

/s/ Kevin J. Hamilton
Kevin J. Hamilton, WSBA No. 15648
KHamilton@perkinscoie
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

CERTIFICATE OF SERVICE – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

41826-6033/LEGAL20298476.1